UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| L. SEVILLE PARKS ) | 3:06-cv-00095-LRH (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| DEBRA BROOKS, *et al.*, ) | |
| Defendants. ) | August 7, 2007 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the Court is plaintiff's motion for summary judgment (#108). Defendants opposed (#142) and plaintiff replied and objected to defendants' opposition (#147). Defendants obtained leave of court and filed a sur-reply (#161). Also before the court is defendants' motion for summary judgment (#141). Plaintiff opposed (#159) and defendants replied (#154). For the reasons stated below, the court recommends that plaintiff's motion for summary judgment (#108) be denied and defendants' motion for summary judgment (#141) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff L. Seville Parks, a *pro se* prisoner, is currently incarcerated by the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP") (#15). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983 alleging that prison officials violated (1) his First Amendment rights to be free from retaliation and to freely exercise his religion; (2) his Fourth Amendment right to be free from unreasonable searches; (3) his Eighth Amendment right against cruel and unusual punishment; and (4) his Fourteenth Amendment right to equal protection. *Id*. Plaintiff names as defendants E.K. McDaniel, ESP Warden; Debra Brooks, ESP Associate

1  Warden; Adam Endel, ESP Associate Warden; Glen Whorten, former NDOC Director; and Greg
2  Cox, NDOC Deputy Director.[1] *Id*.

3       In count I, plaintiff alleges that defendants violated his First Amendment rights by
4  refusing to allow him to attend disciplinary hearings, preventing him from making legal and
5  personal calls at certain times each day, and improperly denying him a kosher meal. *Id*., pp. 4 –
6  4A-2. In count II, plaintiff alleges that after a riot in his unit in September 2005, defendants
7  violated his Fourth and Eighth Amendment rights by making him come out of his cell naked in
8  front of female staff members, destroying his legal papers and illegally confiscating his personal
9  property, and returning him to his empty cell to sleep naked on the concrete floor. *Id*., pp. 5 – 5B-
10 2. Plaintiff also alleges that he is frequently singled out for unreasonable and unnecessary
11 unclothed and body cavity searches, based solely on his race, and in retaliation for his legal
12 actions. *Id*. In count III, plaintiff alleges that defendants violated his Eighth Amendment rights
13 by denying him outdoor exercise for up to nine months at a time, gym shoes, weight equipment,
14 equipment to play baseball, personal hygiene items, sanitary toilet facilities, cleaning supplies,
15 three showers per week, adequate barber services, and special soap. *Id*., pp. 6 – 6A-1. Finally,
16 plaintiff alleges defendants provide African-American inmates with inadequate medical care. *Id*.

17      The Court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the
18 plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff
19 the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th
20 Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

21 ///
22 ///

---

[1] Plaintiff originally filed suit in the Seventh Judicial Court of Nevada on January 30, 2006 (#1). On February 17, 2006 defendants removed to federal court pursuant to 28 U.S.C. § 1441(a) - (c). *Id*. Plaintiff's complaint was dismissed with leave to amend on April 4, 2006 (#11). Plaintiff filed an amended complaint on April 12, 2006 (#15). On May 12, 2006, the District Court issued an order dismissing part of count I, the State of Nevada, and all defendants in their official capacities (#27). On July 18, 2006, this court granted the defendants' motion to have plaintiff declared a vexatious litigant (#63). On March 23, 2007, the District Court adopted and accepted this court's January 11, 2007 report and recommendation denying plaintiff's motion for a temporary restraining order and preliminary injunction (#121 and #140).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.C. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

///
///

**B. Analysis**

**1. Recusal**

Plaintiff claims multiple times that the undersigned is biased and that a conflict of interest exists because the undersigned is a named defendant in pending actions (#108, #147, and #159). Recusal is governed by 28 U.S.C. §§ 144 and 455. Plaintiff's affidavit must set forth facts and reasons for the belief that bias or prejudice exists. 28 U.S.C. § 144. The standard for recusal under Sections 144 and 455 is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986). The alleged prejudice must result from an extrajudicial source. The challenged judge should rule on the legal sufficiency of a recusal motion in the first instance. *Id.* at 939.

A review of the cases plaintiff cites reveals that the undersigned was named as a defendant in *Parks v. Brown, et al.*, 3:06-cv-00659-DAE-LRL and *Parks v. Chambliss, et al.*, 3:06-cv-00602-RLH-LRL. Plaintiff originally filed both cases in 2006 in state court, which defendants subsequently removed to federal court. *See Brown*, 06-659 (filed in state court on October 19, 2006) and *Chambliss*, 06-602 (filed in state court on August 17, 2006). In *Brown*, the undersigned was one of twenty-four defendants but was dismissed on absolute immunity grounds on January 26, 2007. *See Brown*, 06-659 (#25). In *Chambliss*, the undersigned was one of twenty-two defendants but was never served with process. *See Chambliss*, 06-602. Plaintiff filed the current case on October 20, 2005 (#1). Plaintiff cannot name the undersigned as a defendant in subsequent actions for the purpose of obtaining this court's recusal. Moreover, this court was unaware of these cases, and neither case is proceeding as to the undersigned. Plaintiff's allegations of conflict of interest and bias are too vague to meet the sufficiency requirement of Section 144. *See* 28 U.S.C. § 144. Therefore, the undersigned declines to recuse at this time.

**2. Discovery Issues**

Plaintiff also argues that defendants did not adhere to the discovery schedule and that he was not able to depose the defendants (#108, pp. 6-8, 11-13, 18-19; #147, pp. 7-8, 11, 13; #159, pp. 1-4). On November 20, 2006, this court partially granted plaintiff's motion to compel

4

defendants to answer his written discovery requests after it was discovered that defendants had mistakenly overlooked plaintiff's requests (#106). The court extended discovery to January 15, 2007, and granted defendants an extension of time until December 15, 2006 to respond to plaintiff's original written requests. *Id*. Defendants maintain that they complied with the court's order regarding discovery,[2] and that plaintiff's current complaint is that defendants refused to respond to plaintiff's additional discovery requests received on January 5 and 10, 2007 (#161, p. 5). Defendants' counsel informed plaintiff on the record at his January 12, 2007 deposition that his January discovery requests were untimely and defendants would not be responding. *Id*., pp. 5-6.

Plaintiff fails to provide a coherent argument to counter defendants' contentions that they complied with discovery. Furthermore, plaintiff had ample time between November 20, when the court extended the discovery deadline, and December 15, 2006, in which to propound additional discovery requests which defendants could respond to by January 15, 2007. He did not do so. Plaintiff's requests at the last minute are unfair and defendants were justified in not responding.

Plaintiff also argues that he was unable to depose any of the defendants because he did not have appointed counsel. This argument fails. As plaintiff well knows, inmates have no constitutional right to counsel in civil matters. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th cir. 1981). This court has already ruled that it will not enter an order directing the appointment of counsel because plaintiff has demonstrated that he is able to litigate on his own and none of the issues involved appear complex (#106).

Plaintiff also claims that defendants did not produce the videotapes which he requested. Plaintiff's own evidence demonstrates that he was informed on more than one occasion that inmates may not possess videotapes, but that he could arrange a viewing through his caseworker and/or contact defendants' counsel for assistance. *See* #141, DEF-026; *see also* #159, Exhibit B,

---

[2] However, defendants admit that their discovery responses were provided three days after the deadline (#161, n. 6). Defendants move for a three-day extension of time *nunc pro tunc*, which the court now grants.

1  Defendant Cox's Response to Pl.'s Fourth RFP, Request No. 2; *see id.*, Defendants' Response
2  to Pl.'s First RFP, Request No. 1). Plaintiff produces no evidence that he made such a request
3  and was denied.[3]

4  Finally, defendants submit proof that they provided plaintiff with a copy of his deposition
5  transcript, refuting plaintiff's argument that he did not receive a copy (#161, Exhibit A). The
6  court now turns to the merits of the parties' motions.

### 3. Defendants' Motion for Summary Judgment

#### a. Unclothed Body Searches

9  In count I, plaintiff alleges defendants have retaliated against him by preventing him from
10 attending his disciplinary hearings by requiring a body cavity search prior to any hearing (#15,
11 p. 4). In count II, plaintiff alleges that he is frequently singled out for unreasonable body cavity
12 searches based solely on his race, and in retaliation for speaking out against defendants. *Id.*, pp.
13 5 – 5B-2. Plaintiff claims that the body cavity searches are not necessary because he is in full
14 restraints and accompanied by two to three officers, that there is no regulation requiring a body
15 cavity search for internal movement within the prison, and that these searches are particular to
16 him. *Id.*

17 Defendants submit Institutional Procedure ("IP") 7.11, which outlines operations for the
18 segregation unit where plaintiff resides (#141, DEF-053 to DEF-081). IP 7.11 states that when
19 an inmate moves from his cell to the shower, the recreation yard, outside of the unit, or to
20 disciplinary hearings, "the inmate will... receive an unclothed body search" in his cell. *Id.*, DEF-
21 065, 067, 071, and 076. For movement to the recreation yard and outside the unit, IP 7.11
22 appears to require a second unclothed body search in a shower cell prior to moving to the final
23 destination. *Id.*, DEF-068 and 071. Guards must follow the same procedure in the reverse order
24 upon return. *Id.* IP 7.11 does not define "unclothed body search." Defendants submit IP 7.34,
25 entitled "Unclothed body searches – Inmate workers," which defines an "unclothed body search"
26 as "the intense visual inspection of all areas of an unclothed body to include the anal and oral

---

[3] Moreover, the court concludes below that even if all of his allegations are true, plaintiff's rights were not violated; therefore, the videotape is not necessary.

6

1   cavities, behind the ears, the genitals, bottom of the feet, between the fingers and toes and and
2   inmates hair." *Id.*, DEF-082.
3       Plaintiff testified that he attends all of his disciplinary hearings, except that he refuses to
4   attend when he is given "an unreasonable body search." *Id.*, DEF-009. Plaintiff admitted that
5   he is aware of the regulations requiring unclothed body searches when a segregated inmate is
6   moved, and understands it is for the safety and security of the staff. *Id.*, DEF-010. Plaintiff's
7   issue is not with the unclothed body search itself, but with the body cavity search. *Id.* ("My beef
8   with the unclothed body search is once I'm completely nude, there's no reason for me to have to
9   turn around, spread my behind, cough, pull my penis and intestines [sic] up to attend my
10  disciplinary hearing."). *Id.* Plaintiff's position is that it is reasonable to conduct a body cavity
11  search for a contact visit, but unreasonable for disciplinary and classification hearings since he
12  is escorted by two officers and is in full restraints. *Id.* Plaintiff additionally testified that "99
13  percent of the time I attend all the disciplinary hearings." *Id.*, DEF-011. Finally, plaintiff testified
14  that only certain staff members conduct body cavity searches during the unclothed body search,
15  and that they do it only to him to harass him and prevent him from attending his hearings. *Id.*,
16  DEF-011 to 012.
17      The Ninth Circuit has upheld similar regulations, holding that visual body cavity searches
18  are constitutional. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). In *Michenfelder*,
19  the Ninth Circuit approved a Nevada State Prison ("NSP") policy which required visual body
20  cavity searches whenever an inmate housed in the most restrictive unit at NSP left or returned to
21  his cell. *Id.* The frequency of the searches was very high, and prisoners were searched even when
22  they moved only within the segregation unit, and even if they were under escort and in restraints
23  the entire time. *Id.* The court stated that "[e]levated security precautions are justified for
24  prisoners placed in maximum security settings usually because of a history of maladaptive
25  behavior within the prison." *Id.* The policy in *Michenfelder* is clearly similar, if not identical,
26  to the policy at issue here. Thus, the court rejects plaintiff's general claim that it is unreasonable
27  to conduct body cavity searches when moving within his own unit or the disciplinary hearings.
28      Plaintiff also alleges that the officers at ESP only search him personally, in retaliation for

7

1  filing grievances, and because he is African-American. However, the court need not delve into
2  these analyses because plaintiff testified that none of the named defendants in this case was
3  involved in such incidents (#141, DEF-012). While it is possible that certain officers at ESP
4  enforce the body cavity search requirements only as to plaintiff for improper purposes, such as
5  to harass him or based on his race, there is absolutely no evidence that defendants in this case
6  participated in, knew of, or permitted these alleged incidents. Moreover, there is no evidence that
7  defendants know of, condone or promote a policy of selective body cavity searches for the sole
8  purpose of retaliating against or harassing inmates. Plaintiff submitted inmate affidavits which
9  attest that plaintiff is receiving discriminatory treatment and is being singled out for body cavity
10 searches (#159, Exhibit H). However, the affidavits either fail to identify the person responsible
11 for the searches or discuss recent events which are not included in plaintiff's complaint. *Id*. For
12 all the reasons stated above, the court grants summary judgment to defendants on the body cavity
13 search issue.

### b. September 26, 2005 Incident

15 Plaintiff bases count II on a September 26, 2005 riot in which inmates in plaintiff's unit
16 flooded their cells and set fire to property (#15, pp. 5 – 5B-2). Plaintiff alleges that he had no
17 involvement in the riot, yet defendants made him come out of his cell completely naked in front
18 of female staff members and other male inmates, who all laughed at him, while allowing other
19 inmates to come out of their cells dressed in underwear. *Id*. Plaintiff further alleges that
20 defendants destroyed his legal papers and illegally confiscated his personal property, including
21 religious materials, and his mattress, sheets, blanket, toilet paper, and toothpaste. *Id*. Plaintiff
22 claims he was then put back into his empty cell and forced to sleep naked on the concrete floor.
23 *Id*. Finally, defendants allegedly improperly served plaintiff the diet loaf for three days. *Id*.
24 An inmate may challenge the conditions of his confinement as a violation of his Eighth
25 Amendment right to be free from cruel and unusual punishment. To succeed on such a claim he
26 must meet both an objective and subjective standard. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th
27 Cir. 2000). To meet the objective standard, an inmate must prove that the deprivation he suffered
28 was "objectively, sufficiently serious." *Morgan v. Morgenson*, 465 F.3d 1041, 1045 (9th Cir.

8

2006) (citations omitted). Prison officials must provide inmates with adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson*, 217 F.3d at 731. The court must evaluate the circumstances, nature and duration of the deprivation to determine whether it is inhumane or so egregious that it could result in significant injury or the unnecessary and wanton infliction of pain. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).

The subjective standard requires a showing that prison officials were "deliberately indifferent" to the inmate's safety. *Johnson*, 217 F.3d at 731. Deliberate indifference requires that prison officials were aware of facts that presented a substantial risk of harm to the inmate, and recognized that the situation posed a substantial risk of harm. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002). A finding that the defendant's activity resulted in "substantial harm" is not necessary; the Eighth Amendment protects deprivations which result "in pain and suffering for no legitimate penological purpose." *Wood v. Housewright*, 900 F.2d 1332, 1340 (9th Cir. 1990). During emergency situations at a prison, there is a violation only if the infliction of pain is applied "maliciously and sadistically for the very purpose of causing harm." *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1986).

On September 26, 2005, defendants were dealing with the aftermath of an uprising in a maximum security prison. The evidence reveals that plaintiff was involved in the riot, received a notice of charges, and was disciplined for his role (#141, DEF-034 to DEF-038).[4] In such circumstances, IP 7.11 allows prison officials to strip inmate cells and to serve an alternative meal, *see id.*, DEF-058; thus, defendants could properly remove plaintiff's property from his cell. Further, even if plaintiff was forced to come out of his cell "in a nude fashion," considering the duration of the alleged violation and the emergency circumstances, plaintiff's allegation does not

---

[4] Plaintiff denies any role in the riot and submits evidence in an attempt to prove other inmates participated in and/or instigated the riot (#159, Exhibit E). However, plaintiff does not bring a claim challenging the prison's disciplinary finding; rather, he alleges in his complaint that the September 26, 2005 incident violated his Fourth and Eighth Amendment rights (#15, p. 5). Additionally, even if plaintiff had challenged the disciplinary finding, there is more than enough evidence before the court to prove plaintiff's involvement. *See Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (the deferential "some evidence" standard applies to "a prison disciplinary board's finding of a rule violation"). The mere fact that other inmates were involved in and/or instigated the riot does not prove that plaintiff took no part in it.

rise to the level of a "serious" deprivation. There is no evidence that defendants removed plaintiff from his cell naked to "maliciously and sadistically" cause plaintiff harm. *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). Additionally, the Ninth Circuit has held that there is no Fourth Amendment violation where female staff infrequently or in emergency situations observe male inmates during unclothed body searches. *Grummett v. Rushen*, 779 F.2d 491, 496 (9th Cir. 1985). There is also no evidence other than plaintiff's allegation that he was forced to sleep on a concrete floor naked or that he sustained injuries as a result of the alleged violations. The court grants summary judgment to defendants on count II as to the September 26, 2005 incident.

### c. Phone Calls

Plaintiff alleges in count I that defendants retaliated against him by preventing him from making legal and personal calls after certain times each day (#15, p. 4A-1). Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004). Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

Administrative Regulation ("AR") 718 governs inmate personal telephone use generally, and IP 7.00 governs the use of telephones at ESP (#141, DEF-038 to DEF-052). Both regulations apply to all inmates equally. IP 7.00 provides that legal calls have priority over personal calls, and are permitted between "8:00 a.m. and 5:00 p.m. (when the phone system is on) Monday through Friday." *Id*., DEF-045. Attachment A to IP 7.00 states that the telephone system is "on" between 7:00 a.m. and 11:00 a.m., 1:00 p.m. and 3:00 p.m., and 7:00 p.m. and 9:00 p.m. *Id*., DEF-052. AR 718 provides that wardens at each institution are responsible for establishing

1  procedures which allow inmates "reasonable" access to the telephone. *Id.*, DEF-039.

2  "Although prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system." *Johnson v. State of California*, 207 F.3d 650, 656 (9th Cir. 2000). Plaintiff testified that he is able to make legal calls, so clearly he has not been denied use of the phone. *Id.*, DEF-014. Plaintiff's quarrel appears to be with the times the prison schedules for those phone calls. *Id*. This is insufficient for a constitutional violation. *All* inmates must adhere to the ESP telephone schedule; thus, plaintiff has failed to prove that defendants took adverse action against him personally. As well, plaintiff has failed to meet his burden of establishing that the phone schedule does not advance a legitimate correctional goal. Prison officials must be accorded deference regarding day-to-day prison administration, *see Turner v. Safely*, 482 U.S. 78, 84-85 (1987), and the court will not second guess the ESP phone schedule. The court grants defendants' motion for summary judgment as to the count I phone call issue.

### d. Kosher Meal

Plaintiff also alleges in count I that defendants have violated his First Amendment right to freely practice his religion by denying him a kosher meal (#15, p. 4A-2).[5] Defendants argue that because plaintiff is not Jewish, they reasonably denied plaintiff a kosher meal (#141, pp. 18-20).

A prisoner's First Amendment right to freely exercise his religion "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals... ." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Prison regulations alleged to infringe on religious rights are judged under the reasonableness standard set out in *Turner v. Safley*, 482 U.S. 78, 85 (1987). *O'Lone*, 482 U.S. at 349. *Turner* sets out a four-part test: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether there are "alternative means of

---

[5] It appears that plaintiff also attempts to allege a Fourteenth Amendment Equal Protection claim with regard to the denial of his kosher meal. However, plaintiff's vague allegations are not enough and the court construes only a First Amendment freedom of religion claim.

11

1  exercising the rights that remain open to prison inmates;" (3) what "the impact accommodation
2  of the asserted constitutional right will have on guards and other inmates, and on the allocation
3  of prison resources generally;" and, (4) whether the "absence of ready alternatives is evidence of
4  the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89-90.

Defendants denied plaintiff a kosher meal pursuant to AR 814, which governs religious diet procedures (#141, DEF-085 to DEF-089). AR 814 requires the institutional Chaplain to approve an inmate for a special religious diet. *Id*., DEF-086. The Chaplain conducts an interview with the inmate during which "the inmate must demonstrate... his suitability for a religious diet through hereditary or social connection to the religious practice, or substantial philosophical understanding of the religion and its dietary practice." *Id*. Defendants submit the affidavit of James Stogner, the ESP Chaplain, who affirms that the Orthodox Jewish community defines a "Jew" as "(1) one who is born of a Jewish mother, or (2) one who has properly converted to Judaism according to Halacha." *Id*., DEF-093 to DEF-095 (*citing* The Institutional Handbook of Jewish Practice and Procedure, *published by* The Aleph Institute). The process of conversion is defined as including "a fundamental commitment to Judaism, including its law and customs," "a lengthy study of the Torah," "religious circumcision for the purpose of conversion," "immersion in a ritual bath," and "confirmation by the Rabbinical court." *Id*., DEF-095. Chaplain Stogner states that he conducted an interview with plaintiff on June 17, 2004, during which he ascertained that plaintiff was not born of a Jewish mother and that plaintiff had not properly converted to Judaism. *Id*., DEF-094. As a result, Chaplain Stogner determined that plaintiff did not have legitimate standing to receive kosher meals. *Id*.[6]

---

[6] Plaintiff testified during his deposition that he had been a practicing Muslim for three to four years when he filled out an NDOC "faith declaration" form in 2004 stating that he was Jewish. *Id*., DEF-015. Plaintiff admitted that his parents are not Jewish, and that while he had not completed the official conversion process outlined by Chaplain Stogner, he did his own conversion on January 1, 2004, after studying Judaism in November and December 2003. *Id*., DEF-016 to DEF-017. However, during his deposition, plaintiff was unable to define the meaning of important Jewish holidays such as Rosh Hashanah, Yom Kippur, and Passover, among others, and he was not able to define what "kosher" means to the Jewish religion. *Id*. Plaintiff asserted that he feels that "if a person wants to consume a kosher food item, he or she should be entitled to it rather than if he's Jewish or not." *Id*., DEF-018.
    Interestingly, plaintiff's own evidence appears to support defendants' position. Plaintiff submits Chaplain Stogner's May 3, 2005 affidavit from another case in which the Chaplain states that he had not

The court finds that AR 814 meets the *Turner* factors. Prisons have a legitimate penological interest in the costs of "running a simplified food service, rather than one that gives rise to many administrative difficulties," *see Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993); thus, the first factor weighs in favor of defendants. As to the second factor, plaintiff testified that he has been given access to Jewish reading materials (#141, DEF-016 to DEF-017). Plaintiff also has the ability to worship on his own; therefore, plaintiff has "alternative means of exercising" his First Amendment right. The third factor is also met. Defendants assert that granting plaintiff's demand for a kosher meal without meeting AR 814's requirements or the Jewish religion's conversion requirements could have a significant impact throughout the prison (#141, p. 20). Such a situation might arouse jealousy and envy among other inmates who are not Jewish, are not being given special treatment, and who would perceive plaintiff as being favored. *Id*. It would also likely anger Jewish inmates who were compelled to adhere to the official Judaism conversion requirements and AR 814 in order to be approved for a kosher meal. *Id*. The prison has an interest in protecting the integrity of its religious diet program in order to prevent any appearance of favoritism which could cause security problems, including a risk to the Chaplain and plaintiff's own safety. Finally, the prison's denial is in accordance with the tenets of the Jewish faith. The court concludes that AR 814 meets the *Turner* reasonableness factors and grants summary judgment to defendants on the issue of plaintiff's count I freedom of religion claim.

### e. Eighth Amendment Conditions of Confinement

Plaintiff alleges in count III that defendants violated his Eighth Amendment rights by denying him yard time, three showers per week, twice weekly barber services, cleaning supplies, and personal hygiene items (#15, pp. 6 – 6A-1). The court set out Eighth Amendment law above. In evaluating a conditions of confinement claim, the court must look at each alleged condition individually rather than at the totality of the circumstances. *Hoptowit v. Ray*, 682 F.2d 1237,

---

received any request from plaintiff for Jewish religious materials from outside organizations or for Jewish Didactic materials or correspondence courses, that he had never seen plaintiff engage in ritual prayers, and that he had not received any requests from plaintiff to participate in the Jewish holy days in 2004 or 2005 (#159, Exhibit D).

13

1  1246-47 (9th Cir. 1982).

2  **(i) Yard Time**

3  Plaintiff alleges that defendants have denied him outdoor exercise for up to nine months
4  at a time, and contends that defendants have created a situation with regard to yard time to
5  purposely keep segregated inmates inside "24/7," including by calling yard time too early in the
6  morning, and by failing to provide adequate space, weight equipment, or drinking water (#15, p.
7  6). Defendants have also allegedly failed to provide plaintiff with gym shoes, have required
8  plaintiff to submit to body cavity searches before and after yard time, and have searched
9  plaintiff's cell while he is outside. *Id*. Defendants' position is that although plaintiff's refusal
10 to submit to a visual body cavity search sometimes prevents him from receiving yard time,
11 defendants have a legitimate penological purpose in conducting such a search because plaintiff
12 could obtain contraband on the yard (#141, p. 21).

13 Plaintiff testified that "they call yard daily," but that he has not been able to attend because
14 "the yard call is at an unreasonable time," and he does not have gym shoes, gloves or a coat
15 (#141, DEF-014).[7] Plaintiff further testified that certain officers selectively require that he submit
16 to a visual body cavity search prior to going on the yard. *Id*., DEF-022. Finally, plaintiff testified
17 that the guards often write in the yard log that plaintiff refused yard time when he, in fact, did not
18 refuse. *Id*., DEF-014 and DEF-022.

19 As with the body cavity searches, plaintiff has failed to name the correct defendants.
20 There is no evidence before this court to indicate that the warden, associate wardens, or the
21 NDOC directors bring plaintiff to the recreational yard on a daily basis. Nor is there evidence
22 indicating that these defendants have instituted or condone a policy in which segregated inmates
23 are kept inside through the tactics plaintiff alleges. Additionally, even if plaintiff had named the
24 correct defendants, it is clear that plaintiff cannot dictate the time of day he receives yard time.
25 As noted above, visual body cavity searches are constitutionally permissible, and in this case, they

---

[7] Plaintiff also testified that he is entitled to ten hours per week of yard time (#141, DEF-014).
28 However, IP7.11.14 states that inmates in the segregation unit are entitle to "a minimum of five (5) hours per week outdoor exercise" (#141, DEF-074).

14

have a legitimate penological purpose. The court grants summary judgment to defendants.

### (ii) Showers and Barber Services

Plaintiff alleges in count III that defendants have denied him his required three showers per week and that he does not receive barber service as often as the regulations require (#15, p. 6). IP 7.11.15 provides that inmates housed in the segregation unit are to receive "a shower at least three times per week under normal circumstances" (#141, DEF-075). Plaintiff submits shower logs which demonstrate that he consistently receives showers every three days, which essentially amounts to two times per week (#159, Exhibit I).[8] Plaintiff has no liberty interest in prison regulations unless they "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). This is not the case here. Two showers per week rather than three is not an "objectively, sufficiently serious" deprivation. The Constitution requires only "adequate" hygiene. *Hoptowit*, 682 F.2d at 1246-47. Plaintiff is not denied showers, he just does not agree with their frequency.[9]

Finally, plaintiff generally alleges that the barber services are inadequate because he receives them only once a week (#15, p. 6 and #141, DEF-023). IP 7.11.16 provides that inmates "will be afforded a shave at least three times per week" (#141, DEF-075). Again, this is not an "objectively, sufficiently serious" deprivation and plaintiff has no liberty interest in IP 7.11. The court grants summary judgment to defendants on the shower and barber services issues.

### (iii) Personal Hygiene and Sanitation Issues

Plaintiff alleges that defendants have denied him sanitary toilet facilities, cleaning supplies, and personal hygiene items such as special soap, toilet paper, toothpaste, and a toothbrush (#15, p. 6A). Plaintiff testified that he has a toothbrush and toothpaste in his cell (#141, DEF-022); thus, there is no deprivation. Plaintiff additionally testified that he is provided

---

[8] The court notes that the shower logs also reveal that plaintiff sometimes receives daily showers.

[9] Plaintiff further alleges that another similarly situated inmate receives three showers per week while plaintiff receives a shower only every three days. *Id*., p. 6A. There is no evidence that plaintiff is being treated differently than other segregated inmates; in fact, while the names are redacted on the shower logs plaintiff submitted, the dates are not, and it is clear that every inmate in plaintiff's wing who is listed receives the same treatment as plaintiff.

1  with state-issued soap, although he claims that he is allergic to it and that defendants have denied
2  him access to his own personal soap. *Id*. An allegation of an allergy to soap, without proof of
3  the allergy or the harm it inflicts, is not enough to meet the "objectively, sufficiently serious"
4  deprivation requirement. Finally, plaintiff's allegations that defendants have denied him sanitary
5  toilet facilities and cleaning supplies is unsupported by any evidence at all. The court grants
6  defendants summary judgment on the personal hygiene issues.

### f. Medical Care

Plaintiff alleges generally in count III that defendants provide African-American inmates at ESP with inadequate medical care (#15, p. 6A) ("My medical allegation medical is inadequate here at Ely State Prison big time for us <u>Blacks</u>") (emphasis in original). First, plaintiff does not have standing to assert the rights of third parties. *See Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1308 (9th Cir. 1982) (holding that prudential standing requires "a party assert its own rights and interests not those of third parties"). Second, plaintiff alleges no facts to support his allegation of inadequate medical care. The court grants summary judgment to defendants on plaintiff's medical treatment claim.

### 4. Plaintiff's Motion for Summary Judgment

As the court has granted defendants' motion for summary judgment, the court only briefly addresses plaintiff's motion for summary judgment (#108). For approximately the first twenty pages of his motion, plaintiff makes irrelevant procedural arguments. The balance of his motion and reply are rambling, and at times, incoherent. Plaintiff makes almost no argument supported by specific facts; rather, plaintiff generally sets out his constitutional rights and argues that they have been violated, without clearly specifying how or when or by whom. However, because plaintiff appears *in pro se*, this court carefully reviewed his motions and evidence. The court concludes that even if the court had not granted defendants' motion, there would be no basis to grant plaintiff's motion.

///

///

///

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

- There is no evidence of a conflict of interest or bias on the part of the undersigned; therefore, the court declines to recuse;

- There is no evidence of discovery violations on the part of the defendants;

- Visual body cavity searches for the safety and security of the institution are constitutionally permissible and may be conducted when an inmate leaves and returns to his cell;

- There is no evidence that any of the named defendants were involved in, knew of, or condoned the allegedly retaliatory body cavity searches and deprivations of yard time;

- Defendants did not violate plaintiff's rights in the emergency circumstances after the September 26, 2005 riot when they required that plaintiff submit to an unclothed body search, stripped his cell of all property, and put him on an alternative meal for three days. There is no evidence that defendants made plaintiff sleep naked on the concrete floor overnight;

- Defendants did not take adverse action against plaintiff with respect to legal and personal phone calls because plaintiff has access to the phones on the same schedule as the rest of the ESP inmates;

- Defendants did not violate plaintiff's First Amendment rights when they denied plaintiff his kosher meal because he is not Jewish as defined by that religion. The pertinent requirements of AR 814, the religious diet procedure, meet the *Turner* factors;

- Plaintiff has no liberty interest in the requirements of IP 7.11. Plaintiff's receipt of a shower every three days and barber services once a week is not a serious deprivation because the Constitution requires that defendants provide only "adequate" hygiene;

- There is no evidence that plaintiff is allergic to the state issued soap, or that defendants have denied plaintiff personal hygiene items or cleaning supplies;

- Plaintiff fails to state a claim for a violation of his Eighth Amendment right to adequate medical care because he fails to allege specific facts; and

- Plaintiff's motion for summary judgment is incoherent and rambling and fails to set out specific facts to support his alleged constitutional violations.

As such, the court recommends that plaintiff's motion for summary judgment (#108) be **DENIED** and defendants' motion for summary judgment (#141) be **GRANTED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days

of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for summary judgment (#108) be **DENIED** and defendants' motion for summary judgment (#141) be **GRANTED**.

**DATED:** August 7, 2007.

*Valerie P. Cooke*

**UNITED STATES MAGISTRATE JUDGE**